UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., | : | |
| Plaintiffs, | : | |
| v. | : | C.A. NO.: 05-534-S |
| OVERBREAK, LLC, | : | |
| Defendant. | : | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiffs, Hasbro, Inc. and Hasbro International, Inc. (collectively "Hasbro") and hereby moves for summary judgment in its favor on all counts with respect to this matter.

Plaintiffs entered into a Merchandising Agreement with Defendant, Overbreak, LLC ("Overbreak") for the sale of certain "Star Wars" branded property on toys known as Hover Discs, Hover Spheres, Hover Rockets and Hover Tubes. Defendant was obligated to make certain royalty payments to Plaintiffs. Defendant has failed to make the payments owed to Plaintiffs pursuant to this Agreement.

Because this is no material dispute in fact, Hasbro seeks summary judgment be granted in its favor.

HASBRO, INC. and HASBRO
INTERNATIONAL, INC.
By their Attorneys,

Todd D. White (# 5943)
Katy A. Hynes (#6659)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

Date: April 5, 2006.

CERTIFICATION

I hereby certify that a true and accurate copy of the within Plaintiffs' Motion for Summary Judgment was served by regular mail to the following counsel of record on April 5, 2006:

Armedeo Merolla, Esq.
Steven B. Merolla, Esq.
Goldin, Merolla & Tutalo
10 Weybosset Street
Providence, RI 02903

*373638_1.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC. and HASBRO INTERNATIONAL, INC., | : | |
| Plaintiffs, | : | |
| v. | : | C.A. NO.: 05-534-S |
| OVERBREAK, LLC, | : | |
| Defendant. | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. FACTUAL BACKGROUND

On or about October 28, 2004, Hasbro, Inc. and Hasbro International, Inc. (collectively "Hasbro") and Overbreak, LLC (the "Defendant") entered into a Merchandising Agreement ("Agreement"). (*See Merchandising Agreement Sublicense Agreement Summary* dated October 28, 2004 attached Exhibit 1.) Pursuant to the Agreement, the Defendant (designated as a Licensee) was to pay to Hasbro (designated as Licensor) royalty payments for the use of certain "Star Wars" images embossed on non-motorized flying items known as HoverDiscs, Trick Discs, Hover Spheres, Hoverbands, Hover Rockets and Hover Tubes. (*See* Exhibit 1, at p. 1.)

With respect to the payment obligations, the Defendant was to pay a total royalty guarantee to Hasbro/International of $1,000,000. (*See* Exhibit 1 at p. 2.) Additionally, the Defendant was to pay an advance royalty payment to Hasbro/International of $150,000. (*See* Exhibit 1 at p. 2.) Moreover, the Defendant was to pay $350,000 as the balance of advanced royalties owed to Hasbro no later than June 15, 2005, as well as additional payments to be made no later than July 1, 2006 and December 1, 2006, respectively. (*See* Exhibit 1 at p. 2.)

On June 15, 2005, the Defendant failed to meet its commitment to pay Hasbro $350,000 pursuant to the subject Agreement. In accordance with provision 12(c) of the Agreement, if Overbreak violates any of its obligations under the terms of the Agreement, Hasbro has the right to terminate the license as granted, and such notice of termination becomes effective unless Overbreak completely remedies the violations within a designated period of time. (*See* Exhibit 1 at p. 13.)

Subsequent to June 15, 2005, and continuing through November of 2005, Hasbro made inquiry of the Defendant as to when it would make payment of the outstanding royalty obligation it owed to Hasbro in order to overcome the material breach that existed under the Agreement. Despite Hasbro's inquiry, the Defendant failed to remedy the outstanding material breach by making the appropriate payments to Hasbro. (*See* correspondence from Hasbro to Overbreak and Overbreak's response, attached as Exhibits 2, 3 and 4, respectively.)

Hasbro has provided the requisite written notice of termination, pursuant to the subject Agreement. (*See* Exhibit 1 at p. 13). To date, however, the Defendant has not made payment of the outstanding financial obligation it owes to Hasbro. Therefore, the Defendant stands in breach of this contract.

## II. ARGUMENT

The attached Exhibit 1, which has been executed by appropriate representatives of both Hasbro and the Defendant establishes the existence of a contract between the two parties. Exhibit 1 also establishes the duties of each respective party pursuant to that contract. One of the express duties undertaken by the Defendant pursuant to Exhibit 1 was the obligation to pay Hasbro a guarantee payment of One Million ($1,000,000.00) Dollars over the course of a certain period of time.

There is no dispute that the Defendant failed to make one of its contractually obligated royalty payments to Hasbro when it came due on June 15, 2005. Hasbro communicated with the Defendant in an effort to receive payment. (*See* Exhibit 4.) Defendant did not assert any affirmative defense to this obligation. (*See* Exhibit 3.) Defendant simply asserted that sales revenues had not been as expected and therefore they could not make the required payment. (*See* Exhibit 3.)

Any failure to perform a contractual duty which has arisen constitutes a breach. *See, Seybold v. Magrradion Land Co.*, 376 So.2d 1083 (Ala. 1979); *Restatement, Second of Contracts* § 235(2); *Restatement, Contracts* § 312. Under California law,[1] the elements of a breach of contract claim "are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *HSU v. Oz Optics Ltd.*, 211 F.R.D. 615, 619 (N.D. Cal. 2002). Therefore, in order to defeat Hasbro's claim of breach of contract, the Defendant must establish that its non-performance was justified. *See, Restatement, Second, Contracts*, § 235, Comment b., *Restatement, Contracts* § 312, Comment a.

In answering this Complaint, the Defendant has attempted to justify its nonperformance by asserting the following:

1. The subject contract is one of adhesion;
2. Hasbro waived its rights under the agreement;
3. Hasbro should be equitably estopped from enforcing the contract; and,
4. Hasbro failed to join an indispensable party.

As will be established below, none of these defenses is meritorious. Hasbro's Motion for Summary Judgment should be granted.

[1] Pursuant to section 22 of the Agreement (*See* Exhibit 1 at p. 16), the Agreement is to be construed in accordance with Federal laws of the United States and the laws of the state of California.

**A. The Subject Contract Is Not a Contract of Adhesion.**

A contract of adhesion is "imposed and drafted by the party of superior bargaining strength" and "relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Discover Bank v. Superior Court*, 113 P.3d 1100, 1108 (Ca. 2005). An absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party results in unconscionability. *See, Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). California jurisprudence sets forth an analysis for determining whether a contractual provision is unconscionable:

> [U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results… . [B]oth [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.

*Soltani v. Western & Southern Life Insur. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). Such is not the case in the instant matter.

Both Hasbro and the Defendant are sophisticated commercial entities who entered into this agreement with eyes wide open and fully aware of the obligations they were undertaking. Defendant cannot raise an issue of material fact to support its position that Exhibit 1 is a contract of adhesion. This is most clearly demonstrated by the way the relationship between Hasbro and Overbreak materialized. When Hasbro became aware of Overbreak's patent rights, it made inquiry about sourcing products from Overbreak utilizing rights licensed to Hasbro from Lucas. (*See* Exhibit 5.) Overbreak responded to such inquiry by expressing a desire to become a sublicensee of certain rights granted to Hasbro by Lucas for purposes of utilizing "Star Wars" related images on products distributed by Overbreak. (*See* Exhibit 5.) Thus, Overbreak sought from Hasbro the license for the Star Wars images – not the other way around. (*See* Exhibit 5.)

Overbreak cannot seriously claim it was "forced" to enter into a contract of adhesion for a property it affirmatively sought to exploit.

In its *Memorandum for Pretrial Conference* dated March 17, 2006, the Defendant relies, *inter alia*, on *MZ Ventures, LLC v. Mitsubishi Motor Sales of America, Inc.*, 1999 WL 33597219 (C.D. Cal. 1999), an unreported decision from the Central District of California, to support its baseless claim of a contract of adhesion. In *MZ Ventures*, the court noted that "MZ ventures concedes that it could have walked away but it points out that it would have sustained devastating financial results. This might mean that the parties had unequal bargaining power." *Id.* By contrast, in the instant matter, there were no devastating financial results that Overbreak would sustain if it had not agreed to the contract terms with Hasbro. Instead, Overbreak would simply have gone about its business and sold its discs, spheres and bands without the "Star Wars" pictures on them.

Additionally, the Defendant also relied on *Flores v. Transamerica Homefirst, Inc.*, 93 Cal. App. 4th 846, 113 Cal. Rptr. 2nd 376 (2001) in its *Memorandum for Pretrial Conference*. In support of an unconscionability argument, the Defendant directed this Court's attention in *Flores* to the following excerpt:

> HomeFirst unquestionably had superior bargaining strength in that it presented its preprinted documents, cast in generic language, to plaintiffs for signature. Plaintiffs were never informed that the documents, much less the arbitration provisions, were negotiable… . In sum, the undisputed facts indicate that the arbitration agreement was imposed upon the plaintiffs on a "take it or leave it" basis. The arbitration agreement was a contract of adhesion and thereby procedurally unconscionable.

*Id. at pp 381-82.* What the Defendant failed to point out, however, are all the monumental factors that were used by the *Flores* court to conclude it was a contract of adhesion or an

unconscionable contract. For starters, in *Flores*, the plaintiffs were senior citizens, ages 80 and 76, seeking to obtain a reverse mortgage. *Id.* at 849. Other significant factors considered by the Court included: (1) that the information that the plaintiffs received indicated that in order to establish the reverse mortgage plaintiffs were required to sign the loan documents which included the arbitration clause; (2) that the plaintiffs were never informed that the terms were negotiable; (3) that the defendant's representative told the plaintiffs that the defendant was the only company in California offering reverse mortgages and that there were no alternative lenders; (4) that in the event of a breach by the plaintiffs, the defendant's remedy is mandatory prepayment and if plaintiffs fail to pay the defendant is permitted to sell the property; (5) that the defendant is allowed to proceed by judicial or nonjudicial foreclosure, by self-help remedies and by injunctive relief; (6) that the defendant is allowed to proceed with foreclosure despite the pendency of disputes brought to arbitration; and (7) that the mandatory arbitration provisions apply to claims of the borrower against the defendant, but not vice versa. *Id.* at 854-55.

By contrast, in the instant matter, the Agreement was signed by two corporate entities in a commercial setting. Overbreak can hardly be compared to a couple of senior citizens who were trying to obtain a reverse mortgage from what was represented to be the only lender in the state.

Overbreak also tries to make much of the fact that it is a "small" company and Hasbro is a "large" company. This is not the standard for unconscionability. If it were, then every contract that was entered into between two corporate entities would be subject to an unconscionability attack from the smaller of the two companies. The fact that Overbreak may be smaller does not translate into satisfaction of the unconscionability standards set forth by the cases cited in the Defendant's own *Memorandum for Pretrial Conference*. As previously referenced, in *Flores*,

the court relied on a plethora of indicia, none of which are present in the instant matter. The factors in the case at bar include but are not limited to the following: (1) Overbreak is a corporation trying to increase its profits, not a senior citizen trying to obtain a reverse mortgage; (2) Overbreak has its own in-house counsel who assumedly worked with it to negotiate the Agreement in question; (3) in contract negotiation, a corporation does not need to be invited to negotiate terms; rather, it is common knowledge and accepted business practice for corporations operating in the marketplace to negotiate terms; (4) Hasbro never told Overbreak that it was the only entity from which Overbreak could obtain licensing rights for its spheres – Overbreak could have chosen to obtain a license elsewhere for non-"Star Wars" pictures to print on their spheres.

In its *Memorandum for Pretrial Conference*, the Defendant further argues that because Hasbro was the exclusive owner of the copyright in the contract, that the Defendant was precluded from negotiating any terms for fear of making itself liable to a suit for unauthorized preparation of a derivative work under 17 U.S.C. § 106(2). In other words, the Defendant claims that because it could not photocopy the contract as created by Hasbro, that the Defendant was stripped of the ability to negotiate the terms and that this renders the contract unconscionable. This is just plain ludicrous.

Like the other unconscionability arguments made by the Defendant, this contention has no merit and flies in the face of everyday business practice. Corporations, including Hasbro, routinely include a copyright notice on their work – but this does not operate to silence parties who are interested in negotiating an agreement. Parties, including Overbreak, remain free to negotiate any term contained in the contract. Simply put, the copyright provision has nothing to do with a party's ability to negotiate, and certainly does not render the contract unconscionable.

The contract entered into by Hasbro and Overbreak was completed by two sophisticated corporations choosing whether or not to do business with one another. There was absolutely nothing, short of the desire for increased profits, to compel Overbreak to sign the Agreement with Hasbro. If Overbreak did not like the terms and had decided not to enter into the Star Wars license it would have been in the same financial position it was in before the negotiations commenced. Overbreak freely chose to sign an Agreement in the hopes that it would result in increased profits. Just because Overbreak did not realize the desired profits does not make the contract an unconscionable one.

**B. Hasbro Has Waived No Substantive Rights Under the Subject Contract.**

The Defendant also asserts that Hasbro has waived its rights under the agreement. However, this is a naked assertion, unsupported by the facts or the law. Simply because Hasbro has accepted incremental payments from the Defendant since Hasbro filed its lawsuit does not mean that Hasbro waived the Defendant's breach of contract in this matter. If this were the case then a debtor on an unpaid $500 credit card debt could obviate a breach of contract claim by sending in $1.00 after suit has been filed. Hasbro has an obligation to mitigate its damages. Accepting incremental payments which have already come due to it and for which it has filed suit is simply decreasing the obligation owed by the Defendant. It does not waive the lawsuit – nor does it waive the outstanding balance owed.

**C. Hasbro Is Not Equitably Estopped from Proceeding on its Breach of Contract Claim.**

The Defendant's assertion that Hasbro should be equitably estopped from proceeding is equally as unavailing. The doctrine of equitable estoppel "prevents a party from assuming inconsistent positions to the detriment of another party." *U.S. v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970). "An equitable estoppel will be found only where all the elements

necessary for its invocation are shown to the court." *Id.* In *Georgia-Pacific Co.*, the Ninth Circuit articulated these elements:

> "Four elements must be present to establish the defense of estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Id.*

Here, the Defendant does not and cannot establish the four required elements. Hasbro, the party to be estopped, concedes that the first element is satisfied - it likely knows the relevant facts in this matter. Hasbro knew that it was accepting payments from the Defendant after the Defendant breached the contract on June 15, 2005. Hasbro deliberately continued to accept whatever payments the Defendant made thereafter because it believed, among other things, that it has an obligation to mitigate its damages. Moreover, Hasbro is not prosecuting this breach of contract claim on payments made. It is prosecuting its claim on the outstanding balance it is still owed.

As to the second element, however, Hasbro did not intend for this acceptance of post-breach payments to constitute a waiver of its right to receive the remaining balance under the Merchandising Agreement. The Defendant had no right to believe that Hasbro intended anything of the sort. The Defendant was not ignorant of Hasbro's intentions, as evidenced by the afore-mentioned correspondence between the two entities.

Moreover, with respect to the element of "reliance," the Defendant has not demonstrated that it relied on any such conduct on the part of Hasbro to the Defendant's detriment. The simple fact that the Defendant did not sell the quantity of "Star Wars" Hover Discs and Hover Spheres it hoped to sell is not a defense to a breach of contract action. Hasbro has not filed a negligence

action. The Defendant's best intentions or efforts are not the issue. This is a discrete breach of contract action. The doctrine of equitable estoppel does not operate to deny Hasbro that which it is entitled to under the Merchandising Agreement.

In its *Memorandum for Pretrial Conference*, the Defendant argues that "Hasbro's acceptance of payments is an implicit representation that any delay in tender on the part of Overbreak was at most an *insubstantial breach* of the contract." (emphasis added). As of the time of the writing of this Memorandum, Overbreak owes more than $150,000. This sum cannot be described as "insubstantial"; on the contrary, the breach by Overbreak is *quite substantial*.

In addition, in its *Memorandum for Pretrial Conference* the Defendant argues that Hasbro "should be estopped to deny that it accepted several late payments following the alleged breach." Hasbro agrees. Hasbro has never denied that it accepted late payments following the breach. Hasbro simply asserts that the late payments entitle Hasbro to the remaining $150,000 due under the contract. Hasbro is not estopped to make this assertion.

**D. <u>Hasbro Did Not Fail to Join an Indispensable Party.</u>**

Finally, the Defendant has asserted as an Affirmative Defense that Hasbro failed to join an indispensable party, Lucas Licensing, Ltd., ("Lucas") in this matter. Fed. R. Civ. P. 19(a) governs joinder of persons needed for just adjudication and states in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

In the instant matter, none of the elements required by Rule 19(a) are met expressly because the Merchandising Agreement at issue, Exhibit 1, is solely between Hasbro and Overbreak. Thus, there is no evidence to establish that Lucas has *any* legal role in this two-party contract, let alone a role sufficient to implicate Rule 19(a).

In its *Memorandum for Pretrial Conference* , the Defendant argues that "A licensor is indispensable to a suit that involves its license." That may be true, but in the instant matter, Hasbro is the licensor – not Lucas. Lucas sold its licensing rights to Hasbro.

The Defendant also relies on *Technical Tape Corp. v. Minnesota Min. & Mfg. Co.*, 135 F. Supp. 505, 506 (S.D.N.Y. 1955) in its *Memorandum for Pretrial Conference.* The Court in *Technical Tape Corp.* stated the following: "An analysis of this agreement impels the conclusion that Armour has retained for itself such a continuing interest in the use of the patent and the proceeds to be received from its exploitation that it is an indispensable party to this suit." *Id.* Pursuant to the instant Agreement, however, there is no evidence that Lucas retained any interest which Hasbro did not acquire. In fact, Robert Ellis affirms that Lucas had "no control over the Agreement." (*See* Exhibit 5.)

Finally, the Defendant argues that Lucas's financial interest is likely to be harmed directly as a result of nearly any outcome of this litigation. This may be true, but if Lucas's financial interest is harmed, it will be by Hasbro, not by Overbreak.

In sum, the Defendant's argument with respect to Hasbro's failure to join an indispensable party is as devoid of merit is Defendant's other contentions.

## III. CONCLUSION

As a result of the Defendant's failure to appropriately pay royalty payments owed to Hasbro, the Defendant is in material breach of the subject agreement. As a result of the material

breach, the Defendant owes Hasbro all outstanding guaranteed royalty payments as specified in Exhibit 1.

WHEREFORE, Hasbro prays that this Court order the immediate discontinuance of the sale of the aforementioned merchandise by the Defendant, and prays for judgment on its own behalf, including interest pursuant to the subject Merchandising Agreement, as well as attorney's fees and costs pursuant to the Merchandising Agreement and/or Sublicense Agreement and any other fees that this Court finds appropriate in this matter.

HASBRO, INC. and HASBRO INTERNATIONAL, INC.
By their Attorneys,

Todd D. White

Todd D. White (# 5943)
Katy A. Hynes (#6659)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

Date: 4/5/06

CERTIFICATION

I hereby certify that a true and accurate copy of the within Plaintiffs' Memorandum In Support of Their Motion for Summary Judgment was served by regular mail to the following counsel of record on April 5, 2006:

Armedeo Merolla, Esq.
Steven B. Merolla, Esq.
Goldin, Merolla & Tutalo
10 Weybosset Street
Providence, RI 02903

Todd D. White

*373970_1.doc*