EXHIBIT A

# APPROVAL OF SUBLICENSEE AGREEMENT

THIS AGREEMENT dated as of October 28, 2004, is made by and among LUCAS LICENSING LTD., a California corporation, P.O. Box 2009, San Rafael, California 94912, U.S.A. (hereinafter referred to as "Licensor"), OVERBREAK, LLC, 9420 Chivers Avenue, Sun Valley, California 91352 (hereinafter referred to as "Company") and HASBRO, INC., HASBRO INTERNATIONAL, INC. and all "Permitted Licensee Affiliates" (as defined in the License Agreement) jointly and severally "Licensee"), 1027 Newport Avenue, Pawtucket, Rhode Island 02862-1059.

WHEREAS: Reference is made to that certain license agreement between Licensor and Hasbro, Inc., Hasbro International and all, "Permitted Licensee Affiliates" (as defined in the License Agreement) jointly and severally "Licensee") (the License Agreement), pursuant to which License Agreement Licensee is licensed the right to distribute and sell, subject to the terms and conditions of the License Agreement, certain products, goods or articles governed thereby (the "Licensed Products") based on the "Licensed Property" (as defined therein); and

WHEREAS: Company and Licensee have entered into an agreement dated as of October 28, 2004 (the "Sublicense Agreement"), whereby Licensee has sublicensed to Sublicensee the right to distribute and/or sell certain Licensed Products based on or incorporating the Licensed Property in the country or countries set forth therein (the "Territory") and for a term set forth in the Sublicense Agreement;

NOW, THEREFORE, for the promises set forth herein by the parties and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1. RESPONSIBILITY OF LICENSEE. Subject to the terms and conditions of the License Agreement, nothing contained in this Agreement or in the Sublicense Agreement shall in any manner whatsoever affect or otherwise diminish or relieve Licensee of any of its obligations under the License Agreement.

2. SUBLICENSE AGREEMENT: In order to induce Licensor to execute this Agreement, Licensee and Company hereby represent and agree that, subject to the approval of Licensor, Company has executed the Sublicense Agreement. A copy of such Sublicense Agreement is attached hereto as Attachment B-1 and is incorporated herein by this reference. Without limitation of Licensor's rights, if Company breaches a material term of the Sublicense Agreement and as a result of such breach, Licensee is in material breach of the License Agreement, subject to the provisions of Subparagraph 22.2(a) of the License Agreement, then, notwithstanding anything to the contrary contained in the Sublicense Agreement, Licensor shall have the right, pursuant to the License Agreement to send to Company a notice of termination ("Termination Notice") in the name of Licensee and the Sublicense Agreement shall be deemed terminated as of the date Company receives such Termination Notice.

3. APPROVAL BY LICENSOR: Subject to the terms and conditions hereof, Licensor hereby approves Company to act for Licensee as a sublicensee of the rights and obligations of Licensee solely with respect to the sale and distribution of Licensed Products governed by the Sublicense Agreement. It is expressly understood and agreed that the rights sublicensed hereunder do not include the right to manufacture of Licensed Products for which Company must, with Licensor's prior written approval, execute an Approval of Manufacturer Agreement in accordance with the terms and conditions of the License Agreement.

4. ACKNOWLEDGMENT OF LICENSE AGREEMENT: Company hereby represents that Company has reviewed and is familiar with all of the provisions of the License Agreement identified in Subparagraph 8.3 of the License Agreement as being relevant to Company's activities hereunder, and Company agrees that in performing under this Agreement, Company shall perform, be bound by and comply with each and all of

such terms and conditions of the License Agreement as they apply to Company. Without limitation of Licensor's rights and remedies, in the event of a breach or threatened breach by Licensee of any term or condition of the License Agreement and/or in the event of a breach or threatened breach by Company of any term or condition of the Sublicense Agreement that would result in a breach of Licensee's obligations pursuant to the License Agreement, Licensor shall be entitled to seek legal and/or equitable relief by way of injunction or otherwise against Licensee and/or against Company, at the discretion of Licensor, to restrain, enjoin and/or prevent any such breach or threatened breach.

5. OBLIGATIONS OF COMPANY: Company hereby agrees that in exercising the rights authorized herein:

(a) Company shall only distribute and/or sell a Licensed Product pursuant to the Sublicense Agreement in accordance with the instructions of Licensee;

(b) Except as provided in Subparagraph 10(a) herein below, Company shall not assign or license, in any manner whatsoever, the rights granted to Company herein or delegate any of its obligations under the Sublicense Agreement or under this Agreement to any party;

(c) Company shall execute a Trademark License Agreement with Licensor, or with any entity designated by Licensor, with respect to the Licensed Products in a form substantially identical to the Trademark License Agreement executed by Licensee with respect to the Licensed Products; and

(d) Without limitation of Licensor's rights hereunder, Company shall upon execution of the Sublicense Agreement and of this Agreement assume all of Licensee's obligations with respect to rights sublicensed in the Sublicense Agreement for the Licensed Products governed thereby.

6. EFFECT OF EXPIRATION OR TERMINATION: Without limitation, upon the expiration or earlier termination of the Sublicense Agreement, Company shall comply with and be bound by the terms and conditions as are imposed upon Licensee pursuant to subparagraph 22.3 of the License Agreement and (a) immediately cease all activities authorized hereunder respecting the Licensed Products including, without limitation, the distribution and sale of Licensed Products and, within thirty (30) days after such expiration or termination, Company shall send Licensor and Licensee a complete inventory report of all Licensed Products within its possession or control; and (b) at Licensor's election, either (i) deliver to Licensor any or all Production Materials; or (ii) furnish Licensor with a sworn certificate of destruction of such Production Materials, signed by an officer of Company. Upon the expiration or termination of the Sublicense Agreement, including a sell-off period thereunder, if any, except as otherwise expressly provided herein, Company shall have no further right to exercise the rights sublicensed hereunder or otherwise acquired in relation to this Agreement or the Sublicense Agreement.

7. COMPANY RECORDS AND AUDITS:

(a) Company will maintain complete and accurate records during and for five (5) years after the termination or expiration of the Sublicense Agreement, related to this Agreement and/or the rights sublicensed pursuant to the Sublicense Agreement. The obligation to maintain records and to grant Licensor and Licensor's representatives access to such records shall survive the expiration or earlier termination of this Agreement.

(b) An independent certified public accountant selected by Licensor may, upon reasonable notice and during normal business hours, inspect any and all records of Company related to the exercise of Company's rights under this Agreement and/or the Sublicense Agreement, including without limitation its payment obligations. If, upon performing such audit, it is determined that Company owes Licensor monies, Company will immediately make full payment thereof. If the amount of such payment exceeds Five Thousand Dollars

(U.S.$ 5,000.00), Company will bear all out-of-pocket expenses and costs of such audit in addition to its obligation to make full payment. All underpayments and late payments will accrue interest charges from the due date through the date of payment at an interest rate equal to three percent (3%) over the prime lending rate set by the Bank of America N.T.S.A., or the maximum legal rate, if such maximum legal rate is lower, and shall be payable upon demand.

8. LICENSOR AS THIRD PARTY BENEFICIARY. In addition to Licensor's other rights and remedies pursuant to the License Agreement and to this Agreement, Licensor is a third party beneficiary of the obligations of Company under any and all agreements, whether oral or written, between Company and Licensee respecting the Licensed Products, including, without limitation, the Sublicense Agreement, and Licensor shall have the right at any time to enforce such obligations related to the Licensed Property and to exercise any of Licensee's rights and remedies directly against Company as if Licensor were a direct party thereto if Licensee fails to enforce such obligations or to exercise any such rights or remedies within twenty-five (25) days following Licensee's receipt of Licensor's written request therefor.

9. CONFIDENTIALITY.

(a) Confidential Information. Company acknowledges and agrees that the terms and conditions contained in this Agreement, the Sublicense Agreement and/or any other agreement between or among any or all of the parties are confidential, as well as any and all information and material concerning or pertaining to: (i) any script, concept, marketing plan, schedule of Licensor or of any Licensor-Related Entity (including, without limitation, any pre-production, production or post-production schedule or release schedule for any "Prequel" [as defined in the License Agreement] or for any derivative work thereof); (ii) any project, product, good or article pertaining to the Licensed Property; (iii) any term or condition of any agreement between Licensor and any individual or entity relating to any Licensed Product (including, without limitation, any talent agreement); and (iv) any "Copyright Material" (as such term is defined in the License Agreement) are confidential and proprietary to Licensor (individually and collectively the "Confidential Information"). Company further acknowledges and agrees that, except as otherwise expressly provided in this Subparagraph 10(a), Company shall not use, copy, or disclose, or authorize or permit the use, copy or disclosure of, any Confidential Information in whole or in part in any manner or to any person, firm, enterprise, organization, corporation or entity unless authorized in advance in writing by Licensor. Company shall receive and hold, and shall contractually obligate and cause all entities with whom it contracts relative to the Licensed Products to maintain, all Confidential Information in the strictest confidence and Company acknowledges, represents, warrants and agrees to use its best efforts to protect the confidentiality of all Confidential Information. Furthermore, Company will not disclose any Confidential Information to any third party for any purpose (including the exercise of its rights or performance of its obligations) unless Licensor otherwise agrees in writing and such third party has executed a written confidentiality agreement in form and substance acceptable to Licensor, which confidentiality agreement, *inter alia*, shall restrict the use of any Confidential Information to the minimal extent necessary to effectuate the terms and conditions of this Agreement as they apply to such third party and requires such third party to use its best efforts to maintain all Confidential Information in the strictest confidence. Company's obligations pursuant to this Subparagraph 9(a) shall not apply to any Confidential Information which: is authorized in writing by Licensor to become publicly known; is rightfully received from a third party authorized by Licensor to receive such information without restriction and without breach of this Agreement; or is the minimum necessary to comply with any law, regulation, stock exchange rule or valid order of a court of competent jurisdiction.

(b) Publicity or Announcements. Without limitation of the foregoing, except to the minimum extent necessary to comply with any law, regulation or stock exchange rule, no announcements, press releases, or publicity about the existence or any terms of this Agreement, the relationship of the parties or about the

rights relating to the Licensed Products to be exercised hereunder shall be made by Company without the prior written approval of Licensor in each instance.

(c) Rights of Publicity. Except as expressly set forth herein, Company acquires no rights to use and will not use without Licensor's prior written approval the characters, artwork, designs, trade names, copyrighted materials, trademarks or service marks of Licensor in any advertising, publicity or promotion, to express or imply any endorsement by Licensor of Company's services or products, or in any other manner except as expressly authorized in this Agreement. The foregoing provision shall survive expiration or termination of this Agreement.

10. GENERAL.

(a) Assignment. This Agreement will bind and inure to the benefit of each party and to their respective successors and assigns. Company shall not voluntarily or by operation of law assign, sub-license, transfer, encumber or otherwise dispose of all or part of any right or privilege granted to Company in this Agreement, without Licensor's prior written approval. For purposes of this Paragraph, any change in control of Company, whether through merger, acquisition, reorganization, liquidation, foreclosure, involuntary sale in bankruptcy, or the purchase of substantially all of Company's assets or otherwise, shall be deemed a purported assignment subject to Licensor's prior written approval. Any attempted assignment, sublicense, transfer, encumbrance or other disposal without such approval will be null and void and constitute a material default and material breach of this Agreement.

(b) Governing Law. This Agreement will be governed by and construed in accordance with the laws of the federal laws of the United States and the laws of the State of California applicable to agreements executed, and to be performed entirely, within California between California residents (and excluding the United Nations Convention on Contracts for the International Sale of Goods) without regard to choice of provisions and regardless of the place or places of its actual execution and performance. Any suit, action or proceeding between or among the parties hereto arising out of or related to this Agreement will be brought solely in the federal or state courts in the Northern District of California, and Company hereby submits to the personal jurisdiction thereof and agrees to such courts as the appropriate venue. Notwithstanding the foregoing, Company agrees that, for purposes of collecting monies due pursuant to this Agreement, Company, at Licensor's election, may be subject to whatever local laws and courts have jurisdiction in any country of the Territory over Company.

(c) Attorneys' Fees. In the event of any legal proceeding between or among any of the parties hereto arising out of or related to this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief awarded or granted, its costs and expenses (whether or not in connection with litigation and including, without limitation, reasonable attorneys' fees and costs) incurred in connection with any such proceeding.

(d) Equitable Relief. Company recognizes and acknowledges that a breach by Company of any covenants, agreements or undertakings made or assumed by it hereunder or under the Sublicense Agreement will cause Licensor irreparable damage, which cannot be readily remedied in damage, in an action at law, and may, in addition thereto, constitute an infringement of Licensor's intellectual property and other rights in the Licensed Property, thereby entitling Licensor to equitable remedies (including, without limitation, injunctive relief), reasonable costs (including, without limitation, whether or not in connection with litigation) and reasonable attorney's.

(e) Notices. All notices and approvals under this Agreement will be deemed received when delivered personally, sent by confirmed facsimile transmission or received through nationally-recognized express courier, to the address shown below or as may otherwise be specified by either part to the other in accordance with this Subparagraph 10(e). All such notices to Licensor will be directed as follows:

For notices to Licensor: P. O. Box 2009, San Rafael, CA 94903,
Attention: Vice President, Licensing, with a courtesy copy to: General Counsel.

For notices to Company: 9420 Chivers Avenue, Sun Valley, California 91352

(f) No Waiver. No waiver by either party, whether express or implied, of any provision of this Agreement or any breach thereof, and no failure of either party to exercise or enforce any of its rights under this Agreement, will constitute a continuing waiver with respect to such provision or right or as a breach or waiver or any other provision or right, whether or not similar.

(g) Severability. This Agreement is severable. If any provision of this Agreement is found invalid or unenforceable, that provision will be enforced to the maximum extent permissible, and the other remaining provisions of this Agreement will not be affected and shall remain in force.

(h) Approvals. Any and all approvals of Licensor permitted, rendered or required pursuant to this Agreement may be given or withheld by Licensor in the manner provided in the License Agreement.

(i) Headings Captions and Definitions. The name of this Agreement, and all headings and captions herein contained are for reference and convenience only and do not define, limit or expand the scope or intent of any provision hereof and shall not be relied upon in or in connection with the construction or interpretation of this Agreement. Except as herein otherwise expressly defined, all capitalized terms contained in this Agreement shall have the same meaning as such words have in the License Agreement. The words "herein," "hereunder" and similar terms refer to this entire Agreement and shall not be limited to the specific paragraphs or subparagraph in which they are used.

(j) Counterparts. This Agreement may be executed in one or more counterparts, and by telefacsimile transmission, each copy of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument, but this Agreement shall not be binding upon the parties until it has been signed by all parties hereto. The parties hereto agree that telecopied signatures hereto shall be effective and enforceable.

(k) Further Instruments: Except as otherwise expressly provided in this Agreement, each party shall furnish to the others (and shall deliver and cause to be executed, acknowledged and delivered to the other) any further instruments, which any such other party may reasonably require or deem necessary from time to time to evidence, establish, protect, enforce, defend or secure to such other party any or all of its rights hereunder or to more effectuate or carry out the purposes, provisions or intent of this Agreement.

(l) Entire Agreement. This Agreement constitutes the complete and entire agreement by and among all of the parties with respect to the subject matter hereof, superseding and replacing any and all prior agreements, negotiations, communications, and understandings (both written and oral) by and among all of the parties regarding such subject matter. This Agreement may only be modified, or any rights under it waived, by a written document executed by all parties. By signing in the spaces provided below, the parties hereto have accepted and agreed to all of the terms and conditions set forth above.

LUCAS LICENSING LTD. ("Licensor")

By: ______________________

Its: ______________________

THE FOREGOING IS ACCEPTED AND AGREED TO:

OVERBREAK, LLC ("Company")

By: ______________________

Title: President

HASBRO, INC., on behalf of itself and all "Permitted Licensee Affiliates" (as defined in the License Agreement) ("Licensee")

By: ______________________
JANE RITSON-PARSONS

Title: President
Hasbro Properties Group
HASBRO, INC.

APR 12 2005