**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HASBRO, INC., and HASBRO INTERNATIONAL, INC.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **C.A. NO. 05-534-S** |
| **OVERBREAK, LLC,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Overbreak, LLC ("Overbreak"), through undersigned counsel, respectfully submits this, the Defendant's Opposition to Plaintiff's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

Steven B. Merolla, Esquire No. 4673
Goldin, Merolla & Tutalo
10 Weybosset Street
Providence, Rhode Island 02903
Telephone: (401) 861-7400

Attorneys for Defendant Overbreak, LLC

**CERTIFICATION**

I hereby certify that on the 5th day of May, 2006, I mailed a copy of the within Defendant's Opposition to Todd D. White, Esquire, and Katy A. Hynes, Esquire, Adler Pollock & Sheehan P.C., One Citizens Plaza, 8th Floor, Providence, Rhode Island 02903.

Steven B. Merolla, Esquire

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HASBRO, INC., and HASBRO INTERNATIONAL, INC.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **C.A. NO. 05-534-S** |
| **OVERBREAK, LLC,** | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. SUMMARY OF FACTS

The Defendant, Overbreak, LLC ("Overbreak"), is a small California toy company that entered into a 2005 contract ("Sublicense Agreement") with a large Rhode Island corporation, Plaintiffs Hasbro, Inc., and Hasbro International, Inc. (collectively referred to as "Hasbro"). The contract allowed Overbreak to reproduce images from *Star Wars* on certain toys that it was producing. Hasbro, in turn, had obtained a license to use the images from Lucas Licensing ("Lucas"), the owner. Lucas entered into an "Approval of Sublicensee Agreement" (see Exhibit A attached hereto) as ""Licensor" with both parties to this suit, but it has not yet been made a party to this action. To induce Overbreak to sign the contract, which was itself a copyrighted form document whose terms were not negotiable, Hasbro made certain representations as to merchandise sales that it claimed would result from Overbreak's use of the license. Those representations did not prove true or accurate, and Hasbro has sued Overbreak in the United States District Court for the District of Rhode

Island on the claim that Overbreak failed to make the second of four royalty payments required under the contract. (The first payment was $150,000.00). Hasbro continued to accept remittances amounting to approximately $266,000.00 after the allegedly missed payment, and the final two royalty payments have yet to come due. The contract contains a California choice-of-law provision but allows the suit to be brought in Rhode Island. (Sublicense Agreement ' 22.) Hasbro has filed a Motion for Summary Judgment in this case, and Overbreak offers its Opposition.

## II. SUMMARY JUDGMENT STANDARD

When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Cadle Co. v. Haves*, 116 F.3d 957, 959 (1st Cir. 1997). Once the moving party has averred "an absence of evidence to support the nonmoving party's case," *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 48 (1st Cir. 1990), the nonmoving party must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." *Cadle*, 116 F.3d at 960 (citing *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it is one that "may reasonably be resolved in favor of either party." *Id.* (citing *Maldonado-Denis*, 23 F.3d at 581). To defeat a motion for summary judgment, the nonmoving party need only establish that a trialworthy issue exists by presenting "enough competent evidence to enable a finding favorable to the nonmoving

party." *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)).

## III. ARGUMENT

### A. THE SUBJECT CONTRACT IS AN UNCONSCIONABLE CONTRACT OF ADHESION AND THEREFORE IS UNENFORCEABLE.

By statute, California requires the Court to make a determination of unconscionability in the first instance.

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Cal. Civ. Code ' 1670.5. "Unconscionability refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing to Cal. Civ. Code ' 1670.5). "This section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability." Assembly 1979, Cal. Civ. Code ' 1670.5 Legislative Committee cmt. 1; *see also* U.C.C. ' 2-302 cmt. 1.

> This section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability.

U.C.C. ' 2-301 cmt. 1. "[U]nconscionability is a generally applicable defense to contracts." *Ingle*, 328 F.3d at 1170.

Although examples of unconscionably unequal bargaining power often pit a weak consumer against a strong corporation, it is probable that a small company also will have power unequal to that of a large corporation, especially when the large corporation supplies the form contract and maintains exclusive control over the process of negotiation. *See generally MZ Ventures, LLC v. Mitsubishi Motor Sales of America, Inc.*, 1999 WL 33597219, at *16 (C.D. Cal. 1999) (unreported) ("If it were true that the ability to walk away meant that the parties had equal bargaining power, courts would have to find equal bargaining power in every contract. MZ Ventures concedes that it could have walked away but it points out that it would have sustained devastating financial results. This might mean that the parties had unequal bargaining power").

As in this case, the Courts have said that "[t]he parties' agreement as to price, like any other contract provision, may be found unconscionable." *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 216 Cal. Rptr. 345, 354 (1985).

> The courts look to the basis and justification for the price, including the price actually being paid by . . . other similarly situated consumers in a similar transaction. . . . [T]he market price set by an oligopoly should not be immune from scrutiny. Thus courts consider not only the market price, but also the cost of the goods or services to the seller, the inconvenience imposed on the seller, and the true value of the product or service.

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 37 Cal. Rptr. 3d 544, 555 (2006) (internal quotation marks omitted) (quoting *Perdue*, 216 Cal. Rptr. at 354).

In the case of *Flores vs. Transamerica HomeFirst, Inc.,* 93 Cal App. 4th 846, 113 Cal. Rptr. 2d 376 (2001), the court held:

> HomeFirst unquestionably had superior bargaining strength in that it presented its preprinted documents, cast in generic language, to plaintiffs for signature. Plaintiffs were offered no opportunity to negotiate. . . . Plaintiffs were never informed that the documents, much less the arbitration provisions, were negotiable. . . . In sum, the undisputed facts indicate that the arbitration agreement was imposed upon plaintiffs on a "take it or leave it" basis. The arbitration agreement was a contract of adhesion and thereby procedurally unconscionable.

113 Cal. Rptr. 2d at 381-82.

The present case possesses every element of unconscionability sufficiently to render the contract unenforceable as against Overbreak, a small toy company. The contract asserted, in surprising fashion and using small text at the foot of the instrument, that Hasbro was the exclusive owner of a copyright in the very contract instrument itself. Therefore, if Overbreak had desired to photocopy the contract without permission, Overbreak would have violated the 17 U.S.C. ' 106(1) ban on unauthorized reproductions; if it had wanted to retype the contract and substitute a fair and reasonable price term as a counteroffer, it would have made itself liable to a suit for unauthorized preparation of a derivative work under 17 U.S.C. ' 106(2). The possibility of damages for the unauthorized reproductions gave Hasbro the ability to regulate the negotiations in an unfairly selective fashion, as Hasbro's copyright gave it the power to authorize versions of the contract that were favorable to Hasbro's interests and to prohibit any version that included a reasonable licensing fee, for example.

Hasbro leveraged its exclusive control over the negotiability of contract terms to insert a price term requiring Overbreak to pay Hasbro a full 30% of the revenue earned from selling its products. (*See* Sublicense Agreement.) Such an amount is double the rate that is the standard in the industry for such licensing agreements and provides strong evidence of Hasbro's unequal bargaining power.

Hasbro was able to say "take it or leave it" because it had a monopoly on the relevant *Star Wars* images. *See Wayne*. *Star Wars* was distinctively and *uniquely* powerful as an intellectual property franchise, renowned as being in a class of its own. No comparable alternative franchises would have been equivalent to *Star Wars*, whether related to some other film or to a specifically space-based science fiction film with extensive tie-ins to games, action figures, and a vast array of other merchandise popular with a uniquely broad range of demographic groups. Not only is *Star Wars* unique, but within the world of *Star Wars* properties, Hasbro's copyright gave it a complete monopoly on the particular images that Overbreak wished to reproduce. *See MZ Ventures*.

Applying the law to the facts above indicates that Hasbro's possession of an exclusive right to reproduce the contract instrument prevented Overbreak from negotiating the terms of the deal, while Hasbro's monopoly on the relevant licenses in *Star Wars* (itself a unique property without competitors or alternatives) permitted Hasbro to put forth an adhesive, "take it or leave it" contract containing unusual provisions and an unfair price term. The contract therefore is unconscionable as a matter of law. *See* Cal. Civ. Code ' 1670.5(a).

Hasbro has failed to show that it did not possess superior bargaining strength, that the subject matter of the contract and Hasbro's copyright in the contract instrument did not enhance that strength, or that Hasbro did not present Overbreak with the opportunity only to either adhere to the contract or to reject it. *See Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160, 113 P.3d 1100, 1108 (2005). Overbreak does not assert, as Hasbro claims it does,"that [Overbreak] was 'forced' to enter into a contract of adhesion for a property it affirmatively sought to exploit." (*See* Hasbro Motion for Summary Judgment at 5.) Adhesion has nothing to do with force, it is an absence of an opportunity to negotiate. *See Flores*. Which party sought the license is of no importance as long as Hasbro entirely controlled the contract and presented it to Overbreak exclusively on a "take it or leave it" basis. (*See id.*) In this case, the contract was not only "take it or leave it" but included the strong implication of a copyright suit if Overbreak attempted to change its terms. Hasbro in its Motion for Summary Judgment declined to address the holding of *MZ Ventures*, that a corporation acting in a commercial context is capable of being the party with inferior bargaining strength in an unconscionability analysis. (*See* Hasbro Motion for Summary Judgment at 5.) Accordingly, the unconscionability of the adhesive contract in this case clearly is a live issue and is trialworthy in this case. *See Cadle*.

## B. HASBRO WAIVED ITS RIGHT UNDER THE CONTRACT TO INSIST ON PERFORMANCE BY CONTINUING TO ACCEPT PAYMENTS AFTER THE ALLEGED BREACH.

Acceptance of late payment or payments subsequent to an alleged breach waives any claim that such lateness constitutes a material breach of contract. *See generally Redd v.*

*Garford Motor Truck Co.*, 205 Cal. 245, 270 P. 447, 449 (1928) ("The one entitled to insist upon a punctual performance by the other or else that the agreement be ended, may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct."); *see also Winegar v. Gray*, 204 Cal. App. 2d 303, 22 Cal. Rptr. 301, 304-05 (1962) ("This repudiation constituted an anticipatory breach which entitled the plaintiff to . . . attempt to keep the contract alive"); *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 7 Cal. Rptr. 3d 178, 184 (2003) ("The original seller, a bank, accepted and credited late payments. . . . [T]he court determined that [a timeliness provision] had been waived"); *Whitney Inv. Co. v. Westview Development Co.*, 273 Cal. App. 2d 594, 78 Cal. Rptr. 302, 308 (1969) ("When the injured party with knowledge of the breach continues to accept performance from the guilty party, such conduct may constitute a waiver[.]").

In the present case, Hasbro alleges that Overbreak was late in tendering one of the 30% royalty payments required under the contract. To succeed in this suit, Hasbro must prove that the alleged lateness constituted a breach of contract. Hasbro has failed to do so. In fact, Overbreak missed only a single payment, the second of four payments to come due, and it continued to supply further payments thereafter amounting to approximately $266,000.00 which Hasbro accepted. By accepting and crediting those late payments, Hasbro has waived any timeliness provision of the contract and must be prohibited from asserting that any lateness in payment constitutes a breach of contract. *See Whitney*.

Hasbro treats the waiver in only cursory terms in its Motion for Summary Judgment and declines to provide any support. (*See* Hasbro Motion for Summary Judgment at 8.) Hasbro provides only an anecdote about credit cards that is not relevant to the issue of its acceptance of late payments under a licensing contract. (*See id.*) This response arguably fails even to aver "an absence of evidence to support the nonmoving party's case" sufficient to shift the burden of production to Overbreak. *Garside*. Overbreak has made an argument that, especially when all inferences are drawn in its favor, presents a triable and trialworthy issue. *See Cadle*. The absence of a substantial response from Hasbro gives the Court no choice but to decline to rule summarily on this point.

**C. HASBRO IS EQUITABLY ESTOPPED TO PROCEED ON ITS BREACH OF CONTRACT CLAIM BY ITS ACCEPTANCE OF LATE PAYMENTS.**

Equitable estoppel is defined in the California Evidence Code as follows:

> Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.

Cal. Evid. Code ' 623.

The party seeking to establish an estoppel must show by clear and convincing evidence that (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. *In re Marriage of Brinkman*, 111 Cal. App. 4th

1281, 4 Cal. Rptr. 3d 722, 728 (2003) (citations omitted; internal quotations omitted). "The doctrine acts defensively only. It operates to prevent one from taking unfair advantage of another[.]" 4 Cal. Rptr. 3d at 728.

In the present case, Hasbro took a variety of actions that led Overbreak to believe that any lateness in payment was not considered a breach of the contract. Hasbro continued to accept several payments amounting to approximately $266,000.00 after Overbreak missed only one payment in this contract, which was due June 15, 2005. Hasbro's acceptance of payments is an implicit representation that any delay in tender on the part of Overbreak was at most an insubstantial breach of the contract, which was accepted by Hasbro. In reasonable reliance on that representation, Overbreak declined to adopt a litigation posture, it continued to make payments, and it continued to manufacture the toys under license, upholding its end of the contract in the belief that the contract remained valid and in force. Hasbro therefore should be estopped to assert that any breach of contract occurred.

Viewing the evidence in Overbreak's favor, Hasbro has failed to show that Overbreak lacks evidence to support its case. *See Garside*. Hasbro disputes some of Overbreak's contentions, but it does not show an absence of evidence. Indeed, Hasbro relies on an intentional misconstruction of Overbreak's argument in order to make its own case. (*See* Hasbro Motion for Summary Judgment at 9.) For example, Overbreak does not claim that its detrimental reliance involved some expectation with regard to toy sales figures. (*See id.*) Instead, Overbreak argues that it kept making payments and kept producing toys, relying on Hasbro's indications that it continued to believe in the vitality of the contract, although it is

now clear that Hasbro believed otherwise. Overbreak would have been better off if it had stopped producing toys and prepared for litigation. Yet Hasbro interprets Overbreak's reliance argument as having to do with sales figures; because Hasbro has not even addressed Overbreak's arguments squarely, Hasbro can hardly have averred that Overbreak lacks evidence as required for summary judgment. *See Garside*. Accordingly, Hasbro's Motion must be denied, and a genuine dispute exists regarding whether Hasbro should be estopped.

**D. HASBRO HAS FAILED TO JOIN LUCAS LICENSING, AN INDISPENSABLE PARTY TO THIS ACTION UNDER FED. R. CIV. P. 19.**

The requirement that a particular party must be joined is a matter of federal law. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 (1968) ("[I]t has been clear that in a diversity case the question of joinder is one of federal law[.]"). Fed. R. Civ. P. 19(a) states that a party shall be joined if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party[.]

Rule 19(b) provides that "[i]f a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." This defense "may be made in any pleading permitted

or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. 12(h)(2). The defense will result in dismissal if a party cannot be joined, and the court determines that such failure to join will cause undue prejudice to one of the parties. *Friends of Sakonnet v. Dutra*, 738 F. Supp. 623, 636 (D.R.I. 1990).

> If absent parties are indispensable, the entire action, including the allegations against the diverse party, must be dismissed. In determining the indispensability of parties, district courts have considerable discretion to assess the importance and weight of all relevant factors.

*Potter v. Bennett*, 826 F. Supp. 62, 64 (D.R.I. 1993) (citations omitted) (dismissing the case because, *inter alia*, without the presence of indispensable parties, defendant "would have to bear the entire cost of liability in this case or engage in a second action against the non-diverse defendants for contribution"). A licensor is indispensable to a suit that involves its license. *See Channel Master Corp. v. JFD Electronics Corp.*, 260 F. Supp. 568, 572 (E.D.N.Y. 1966) (finding patent licensor indispensable); *Technical Tape Corp. v. Minnesota Min. & Mfg. Co.*, 135 F. Supp. 505, 506 (S.D.N.Y. 1955) ("An analysis of this agreement impels the conclusion that Armour has retained for itself such a continuing interest in the use of the patent and the proceeds to be received from its exploitation that it is an indispensable party to this suit").

In the present case, Lucas is the owner of the license at issue but has not been joined. Lucas declared its interest in the present issues when it deliberately joined the other two parties, Overbreak and Hasbro, in signing the Approval of Sublicensee Agreement as the "licensor," with Hasbro as the "licensee." ( See Approval of Sublicense Agreement, Exhibit A.) Lucas essentially requires payment by Hasbro in return for granting it a license to use the

Star Wars intellectual property, and Lucas sets the terms by which Hasbro may sublicense that property to Overbreak. Lucas's financial interest therefore is likely to suffer direct harm as a result of this litigation, as Hasbro's contract with Overbreak affects Lucas's potential revenue. If Hasbro were to loose this case, for example, Overbreak would continue to be subject to "legal and/or equitable relief" as outlined in Paragraph 4 of the "Approval of Sublicensee Agreement". If Overbreak were to recover attorney's fees from Hasbro, Lucas might become liable for those fees; if Lucas were to permit a settlement that gave it less than its full fee, it would have no way to make that preference known if it were kept out of the suit. The absence of Lucas directly affects Hasbro's ability to settle this case, and none of the terms or parameters of the involvement of Lucas or the potential harm to its interests can be clarified or litigated without Lucas's presence. Therefore, Lucas is an indispensable party whose absence is impermissible under Fed. R. Civ. P. 19, and this Court should dismiss the suit.

Hasbro's spare response to this argument comprises the following points: (a) the contract does not include Lucas, so Lucas has no legal role; (b) Lucas is not the "licensor" in this case, and so is dispensable; (c) Hasbro acquired all of Lucas's relevant interests, leaving it with nothing; and (d) Lucas's financial interest may be endangered by this suit, but because the fault will be Hasbro's, Lucas still is not an indispensable party. (Hasbro Motion for Summary Judgment at 11.) None of the arguments avails Hasbro or rebuts Overbreak's claims sufficiently to show that no trialworthy issue exists.

Lucas has an interest in the subject of the action. *See* Fed. R. Civ. P. 19(a) ("[T]he person claims an interest relating to the subject of the action"). The "licensor" in this case is Lucus. Hasbro is the "licensee," and Overbreak is the "sublicensee." (See Approval of Sublicense Agreement, Exhibit A.) *All three parties signed an agreement to that effect*, providing clear proof that Lucas has an essential interest in its intellectual property and wishes to control the manner in which it is used, even after it grants some rights to a licensee. (*See id.*) Hasbro's argument that Lucas is not a "licensor" therefore is bootless. The existence of the Approval of Sublicense Agreement is proof that Lucas did not sell off all of its rights to the relevant *Star Wars* property but retained at least the right to approve or reject companies like Overbreak that would be using those properties through Hasbro. Lucas also retained the "right to seek legal and/or equitable relief" against Overbreak.

Additionally, Hasbro admits that it "may be true" that Lucas has a financial interest that "is likely to be harmed directly as a result of nearly any outcome of this litigation." (Hasbro Motion for Summary Judgment at 11.) This is all the evidence required to find Lucas an indispensable party. Lucas retains a direct "interest relating to the subject of the action," the license to use certain *Star Wars* intellectual property, and the right to sue Overbreak directly. The disposition of this matter without Lucas would be prejudicial to all parties. Whether in regard to Lucas's potential liability for attorney fees or Hasbro's settlement of this case for less than Lucas believes it is owed, the ultimate licensor has an important interest that may be impeded by this litigation. Accordingly, Hasbro's Motion for summary judgment should be denied.

## IV. CONCLUSION

Hasbro has failed to show that *any* of its four arguments is incapable of being fairly resolved in favor of either party, and thus it has failed to show that this Court may grant summary judgment in Hasbro's favor. Reviewing the evidence in the light most favorable to Overbreak and drawing all reasonable inferences in its favor indicates that the questions of whether the contract was adhesive, whether Hasbro waived the alleged breach, whether Hasbro is estopped to argue otherwise, and whether Lucas must be joined in this suit all present genuine issues worthy of trial.

WHEREFORE, Overbreak prays that this Court deny Hasbro's Motion for Summary Judgment.

Defendant,
OVERBREAK, LLC
By it's attorney,

Steven B. Merolla, Esquire # 4673
Goldin, Merolla & Tutalo
10 Weybosset Street
Providence, Rhode Island 02903
(401) 861-7400

## CERTIFICATION

I hereby certify that on the 5th day of May, 2006, I mailed a copy of the within Defendant's Opposition to Todd D. White, Esquire, and Katy A. Hynes, Esquire, Adler Pollock & Sheehan P.C., One Citizens Plaza, 8th Floor, Providence, ~~Rhode Island~~ 02903.